Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Rd., Ste. B
Las Vegas, Nevada 89147
Telephone: 702-420-2001
ecf@randazza.com

Carrie Goldberg (*pro hac vice* forthcoming)
C.A. GOLDBERG, PLLC
16 Court St, 33rd Floor
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

*Attorneys for Defendant and Counterclaim-Plaintiff,*
*Cheryl Bawtinheimer*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| Rapid Relief Team (RRT) Ltd.,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>Cheryl Bawtinheimer,<br><br>Defendant and Counterclaim-Plaintiff,<br><br>vs.<br><br>Brown Rudnick LLP, Katy-Jade Church, and Michael Graif,<br><br>Counterclaim-Defendants. | Case No. 4:25-cv-10864-JST<br><br>**DEFENDANT AND COUNTERCLAIM-PLAINTIFF CHERYL BAWTINHEIMER'S ANSWER AND COUNTERCLAIM**<br><br>**DEMAND FOR JURY TRIAL** |



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

Defendant Cheryl Bawtinheimer brings this Counterclaim and also answers the First Amended Complaint ("FAC") (ECF No. 7) filed by Plaintiff Rapid Relief Team Ltd., and includes her anticipated defenses to the Amended Complaint as follows:

## COUNTERCLAIM

Counterclaim-Plaintiff Cheryl Bawtinheimer brings this Counterclaim against Counterclaim-Defendants Rapid Relief Team Ltd. ("RRT"); Brown Rudnick LLP ("Brown Rudnick"); Katy-Jade Church; and Michael Graif (collectively, "Counterclaim-Defendants") for violation of 17 U.S.C. § 512(f) and declaratory judgment, and alleges as follows:

## INTRODUCTION

1. This lawsuit is a censorship campaign masquerading as a copyright case over a clip-art cartoon bird logo. Its true and transparent purpose is to try and shut down criticism of the Plymouth Brethren Christian Church ("PBCC"). The PBCC, also known as the "Exclusive Brethren," is an extremely wealthy cult with strict tenets and strong central control over its members' lives, which abuses any who seek to leave the cult.

2. Despite its extremely efficient and successful measures to lock down almost every other aspect of its members' personal lives, it has a shockingly high level of sexual abuse. Research presented in 2025 at the International Cultic Studies Association conference by Dr. Jill Aebi-Mytton found that 41% of former Exclusive Brethren participants reported childhood sexual abuse, most often perpetrated within the organization.[1]

3. "The church is supported by a business empire that includes more than 3,000 companies in countries around the world. The Brethren say on their website that their

[1] *See* International Cultic Studies Association (ICSA), "Child Sexual Abuse in Closed Religious Communities: Findings From a Large-Scale Quantitative Study," YOUTUBE (Oct. 31, 2025), available at: https://www.youtube.com/watch?v=OZ_g8-0j_M4.

international businesses turn over $22 billion a year. The actual figure is believed to be much higher." Louise Milligan, *Plymouth Brethren attempted to silence alleged rape victim with a million dollars and a non-disclosure agreement,* AUSTRALIAN BROADCASTING CORPORATION, (Sept. 14, 2025), attached as **Exhibit 28**.[2]

4. Members who choose to leave the Exclusive Brethren, or who are excommunicated for infringing any of its rules, do not just lose their religion. They are shunned and regarded as dead by spouses, parents, children, and friends. As the cult's rules dictate that its members can only be employed by other members or cult-run businesses, they frequently lose their jobs too. *See* Craig Hoyle, "Leaving the Exclusive Brethren: 10 years on," STUFF (Feb. 8, 2020), attached as **Exhibit 1**;[3] Ruth Hill, "Former Exclusive Brethren Church member providing support for others leaving," STUFF (Mar. 29, 2023), attached as **Exhibit 2**.[4]

5. Given the fact that members are kept inside a culturally hermetically sealed bubble, those who escape or are cast out are usually ill equipped to deal with the outside world, and the trauma from their time inside the PBCC coupled with a complete removal of all support leads to extremely high levels of mental trauma and PTSD, as they struggle to survive.

6. LGBTQ+ people born into this community are treated as if their existence is an abhorrent sin, and some have been illegally prescribed chemical castration in an attempt to "cure" them. When this inevitably fails, they are cast out without mercy. *See* Michael Bachelard, "Liberal donors the Exclusive Brethren deny being anti-gay. Here's proof they are,"

[2] Available at: https://www.abc.net.au/news/2025-09-15/exclusive-brethren-plymouth-alleged-abuse-nda-four-corners/105762208 (last visited April 3, 2026).
[3] Available at: https://www.stuff.co.nz/life-style/well-good/inspire-me/119304121/leaving-the-exclusive-brethren-10-years-on.
[4] Available at: https://www.stuff.co.nz/nz-news/350470215/former-exclusive-brethren-church-member-providing-support-for-others-leaving.



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

THE SYDNEY MORNING HERALD (June 20, 2016), attached as **Exhibit 3**;[5] Briana Fiore, "Ex-Brethrens on breaking free," ABC (Nov. 18, 2024), attached as **Exhibit 4**.[6]

7. Some of those who left have spoken out over the years. From the 1970s to the present day, there is a series of former members who set up websites or spoke to journalists about the abuse they suffered, and each one has been silenced by heavy-handed SLAPP[7] tactics, intrusive surveillance, and court-mandated searches of homes and electronics. *See* Nicky Hager, "'We had vehicles outside the house': Exclusive Brethren used Thompson and Clark to spy on ex-members," RADIO NEW ZEALAND (Apr. 20, 2021), attached as **Exhibit 5**;[8] Bevan Hurley, "Former Exclusive Brethren members hit with dawn raids, legal suits after speaking out against the secretive Christian sect," STUFF (Aug. 9, 2020), attached as **Exhibit 6**;[9] Louise Milligan, et al., "These Plymouth Brethren members stepped out of line, then the threats and intimidation started," ABC (Sept. 15, 2025), attached as **Exhibit 7**.[10]

8. Bawtinheimer is a former PBCC member. While she was a child member of the PBCC, she was sexually abused and sex trafficked by an Exclusive Brethren/PBCC elder. Declaration of Cheryl Bawtinheimer ("Bawtinheimer Dec."), attached as **Exhibit 8**, at ¶¶ 4-5.

[5] Available at: https://www.smh.com.au/politics/federal/liberal-donors-the-exclusive-brethren-deny-being-antigay-heres-proof-they-are-20160619-gpmkci.html.
[6] Available at: https://www.abc.net.au/news/2024-11-19/leaving-the-plymouth-brethren-christian-church-in-australia/104323648.
[7] SLAPP is an acronym for "Strategic Lawsuit Against Public Participation," which is a lawsuit meant to censor critics rather than redress an actual legal harm. RRT's suit against Bawtinheimer is a SLAPP, though because RRT asserts only a federal cause of action, it is not subject to California's Anti-SLAPP law, Cal. Code Civ. Proc. § 425.16.
[8] Available at: https://www.rnz.co.nz/national/programmes/morningreport/audio/2018792258/we-had-vehicles-outside-the-house-exclusive-brethren-used-thompson-and-clark-to-spy-on-ex-members.
[9] Archived version available at: https://web.archive.org/web/20210501122928/https://www.stuff.co.nz/national/300063194/former-exclusive-brethren-members-hit-with-dawn-raids-legal-suits-after-speaking-out-against-the-secretive-christian-sect.
[10] Available at: https://www.abc.net.au/news/2025-09-16/exclusive-brethren-plymouth-former-members-threats-four-corners/105766026.

After leaving the cult, she started the Get-a-Life Podcast ("GAL") on YouTube, in collaboration with other former members. *Id*. at ¶ 6. The podcast's purpose is to show solidarity with other former PBCC members, to try and create a community that can act as a support network for those who leave, to provide information about the PBCC, and to comment upon the PBCC to warn the public about this organization. Admittedly, it is not a place to find flattery for the PBCC, as it is devoted to revealing hypocrisy in the cult and sharing stories about members who have left and suffered trauma at the hands of the PBCC. *Id*. at ¶¶ 7-8.

9. The Podcast's videos all relate to the PBCC. Most are interviews with former members, and the episodes expose abuse and corruption in the Exclusive Brethren, and offer a lifeline of support for former members who find themselves lost in the world.

10. Some of these stories have been taken up by mainstream media, especially in Australia, where the cult is headquartered. *See* C.S. Hagen, "Whistleblowers allege church with ND ties is replacing religion with riches," INFORUM (Aug. 13, 2024), attached as **Exhibit 9**;[11] Pippa Bailey, "Escaping Eden: For those who leave the Exclusive Brethren sect, separation comes at great personal cost," THE NEW STATESMAN (Aug. 23, 2023), attached as **Exhibit 10**;[12] Cherise Seucharan and Jesse Brown, "Plymouth Brethren Christian Church members under RCMP investigation for alleged sexual abuse in Saskatchewan," CANADALAND (Nov. 7, 2022), attached as **Exhibit 11**.[13] A number of documentaries and high-profile newspaper articles have been published that originate from the Get a Life podcast. *See* International Cultic Studies Association (ICSA), "It's Our Turn to Speak – How an Apostates' Podcast Is Changing Lives –

---

[11] Available at: https://www.inforum.com/news/the-vault/whistleblowers-allege-church-with-nd-ties-is-replacing-religion-with-riches.

[12] Available at: https://www.newstatesman.com/long-reads/2023/08/escaping-eden-exclusive-brethren.

[13] Available at: https://www.canadaland.com/plymouth-brethren-christian-church-members-under-rcmp-investigation-for-alleged-sexual-abuse-in-saskatchewan/.



RANDAZZA | LEGAL GROUP

and the PBCC Are Listening," YOUTUBE (Oct. 31, 2025);[14] Rory MacLean, "Sask. RCMP not investigating historic rape case involving church elder, woman says," CTV NEWS (May 30, 2023), attached as **Exhibit 12**;[15] ABC News In-depth, "Escaping the religious 'cult' tied to big business | Four Corners Documentary," YOUTUBE (Sept. 15, 2025);[16] Ratfucker podcast series, "Chapter Two: The Brethren,"[17] CANADALAND (Nov. 7, 2022).[18]

11. The PBCC's character came to the attention of the UK's charity regulator, the Charity Commission, in the 2010s. This came to a head regarding the Preston Down Trust, an entity affiliated with the PBCC and that operated a PBCC meeting hall in the UK. The Charity Commission concluded that not only did the Preston Down Trust offer no net public benefit, but that it was detrimental and harmful to society. James Gray, "Christian group makes legal appeal for charity status," THE GUARDIAN (Jan. 3, 2013), attached as **Exhibit 13**;[19] Decision of the Charity Commission for England and Wales regarding Preston Down Trust (Jan. 3, 2014), attached as **Exhibit 14**.[20] They cancelled its charitable status and tax-free privileges. *Id.* This is not surprising, given reporting on how its leader advised people who left the cult to kill themselves by ingesting rat poison or arsenic. Billy Kenber, "Defectors may as well commit suicide, says leader of sect," THE TIMES (Sept. 18, 2015), attached as **Exhibit 23**.[21]

---

[14] Available at: https://www.youtube.com/watch?v=urpi6O_aVno.
[15] Available at: https://www.ctvnews.ca/regina/article/sask-rcmp-not-investigating-historic-rape-case-involving-church-elder-woman-says/.
[16] Available at: https://www.youtube.com/watch?v=lFEIJr5rln4.
[17] Bawtinheimer's maiden name is Cheryl Hope. Some of the news coverage and documentaries discussing her experience with the PBCC refer to her as Cheryl Hope.
[18] Available at: https://www.canadaland.com/shows/ratfucker/.
[19] Available at: https://www.theguardian.com/voluntary-sector-network/community-action-blog/2013/jan/03/christian-brethren-legal-appeal-charity-commission-status.
[20] Available at: https://assets.publishing.service.gov.uk/media/5a74c214e5274a3cb2866f23/preston_down_trust_full_decision.pdf.
[21] Available at: https://www.thetimes.com/uk/religion/article/defectors-may-as-well-commit-suicide-says-leader-of-sect-h2sdml9smmz.



RANDAZZA | LEGAL GROUP

12. In order to regain a tax-exempt vehicle, the Exclusive Brethren created the "Rapid Relief Team," a public-facing disaster relief charity whose operating procedures are designed to gain maximum press and TV coverage by setting up brightly branded red tents at disaster sites, where conspicuously uniformed volunteers hand out coffee and fast food. The RRT functions as the PR wing of the PBCC, generating a constant stream of "feel-good" publicity in an attempt to counter and bury the darker truths hidden behind closed doors. Get a Life Podcast, "Get A Life Ep. 139 The Truth About Rapid Relief Team (RRT)," YOUTUBE (June 22, 2025).[22]

13. Among its many episodes, Get-a-Life has produced several videos in which the RRT's slogan of "Care and Compassion" is contrasted with the reality faced by members who do not conform to the Exclusive Brethren's rules, including the cruel shunning of those who leave. It is these videos that are the subject of censorship efforts by the PBCC vis-à-vis RRT.

14. The complaint in this case is part of the PBCC's censorship campaign. YouTube's anti-piracy policy can be manipulated by censors, because if a channel gets too many complaints about copyright infringement, YouTube deems them a "repeat infringer" and shuts down the channel. *See, e.g., Business Casual Holdings, LLC v. YouTube, LLC,* No. 21-cv-3610 (JGK), 2022 U.S. Dist. LEXIS 212212, at *4 (S.D.N.Y. Nov. 22, 2022) (describing the repeat infringer policy). Of course, even if the channel itself does not get banned, the videos are removed from view, stifling the video's author's speech with a prior restraint.

15. The $22 billion cult therefore retained Brown & Rudnick and attorneys Katy-Jade Church and Michael Graif to solve their criticism problem. The lawyers came up with an underhanded (but not very original) plan to barrage the channel with knowingly false takedown

[22] Available at: https://www.youtube.com/watch?v=cUIXSs8UGeY.



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

demands under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c), to try and get the entire channel shut down and to intimidate Bawtinheimer into silence.

16. The RRT lawsuit against Bawtinheimer is part of that pattern of intimidation. Because once videos come down off of YouTube due to a bogus DMCA notice, the publisher can send a counter-notification. That can restore the video to the platform, but YouTube will keep the videos down if there is a lawsuit in place.

17. The lawsuit by RRT here was knowingly frivolous when it was filed, as were the DMCA notices, and this was no honest mistake by inexperienced counsel. This lawsuit itself was filed so that RRT could tell YouTube that a lawsuit was in place, but the frivolous nature of the suit is apparent on the face of the complaint.

18. Brown & Rudnick definitely knew better. They were plaintiff's counsel in a case brought under 17 U.S.C. § 512(f) just over a year ago. *See Channel 781 News v. Waltham Community Access Corp.*, 761 F. Supp. 3d 371, 372 (D. Mass. 2025). In that case, they represented a party that was victim to ill-considered DMCA takedown notices who filed suit against the alleged copyright owner. However, at least the party who sent the DMCA takedowns was trying to protect their monopoly on certain footage, and not trying to censor a critic. The takedowns were a bad idea and failed to consider fair use, but at least they were not knowingly abusive.

19. In this case, Brown & Rudnick's attorneys had access to that knowledge, and tout themselves as experts in the field. Their actual knowledge of copyright law and fair use should have merged with good ethics and resulted in them telling their client "no." Instead, they used that knowledge to try and game the system to silence RRT/Exclusive Brethren apostates and critics.

RANDAZZA | LEGAL GROUP

20. Accordingly, the attorneys who themselves signed the DMCA notices (which is an ill-advised thing to do even on a non-bogus DMCA notice) under penalty of perjury are properly counterclaim-defendants here, as is their firm, as is their client.

21. This Counterclaim is necessary to put a roadblock in the way of this intimidation and censorship. The PBCC may wield great financial and social power over its former members, but that power does not warp the power of a federal court the way it warped the ethics at Brown & Rudnick. And this federal court is depended upon and relied upon by people who come before it to level the playing field when multibillion dollar abusive organizations load up with mega law firms to try and further abuse them.

**THE PARTIES**

22. Counterclaim-Plaintiff Cheryl Bawtinheimer is a survivor of sexual abuse committed by an Elder in the Exclusive Brethren/PBCC. This Elder was, at least as recently as May 2023, a volunteer for RRT.

23. Counterclaim-Defendant Rapid Relief Team Ltd. ("RRT"), is an Australian legal entity. It is an instrumentality of PBCC, serves as its public relations arm, and is responsible for the acts complained of in this Counterclaim.

24. Counterclaim-Defendant Brown Rudnick LLP ("Brown Rudnick") is an entity organized under the laws of the Commonwealth of Massachusetts. It conducts business in the State of California and has offices in Los Angeles and Irvine, California. At all relevant times, it served as legal counsel for RRT and its attorneys committed the acts complained of in this Counterclaim on behalf of RRT, and it is responsible for the actions of its members.

25. Counterclaim-Defendant Katy-Jade Church was at all relevant times an attorney at Brown Rudnick, counsel for RRT. Church is one of the attorneys who committed the

RANDAZZA | LEGAL GROUP

unlawful acts complained of in this Counterclaim on behalf of RRT – and who falsely swore under penalty of perjury that she had a good-faith belief that Bawtinheimer's use of RRT's allegedly copyrighted material in the videos identified in multiple bad-faith DMCA takedown requests was not "authorized by . . . the law."

26. Counterclaim-Defendant Michael Graif was at all relevant times an attorney at Brown Rudnick, counsel for RRT, holds himself out as an expert on copyright law, and fair use in particular. On information and belief, he is a citizen of New York. Graif is one of the attorneys who committed the unlawful acts complained of in this Counterclaim on behalf of RRT – and who falsely swore under penalty of perjury that he had a good-faith belief that Bawtinheimer's use of RRT's allegedly copyrighted material in the videos identified in multiple bad-faith DMCA takedown requests was not "authorized by . . . the law."

**JURISDICTION AND VENUE**

27. This Court has jurisdiction per 28 U.S.C. §§ 1331 and 1338(a).

28. This Court has personal jurisdiction over Counterclaim-Defendants because each of them committed the complained-of actions directed at YouTube, which is located in California. Specifically, they sent or instructed to be sent bad-faith takedown notices under the Digital Millennium Copyright Act (the "DMCA"), 17 U.S.C. § 512 to YouTube, which is located in this District, demanding removal of Bawtinheimer's videos.

29. Venue is proper in this District per 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this District. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3), as Counterclaim-Defendants are subject to personal jurisdiction in California and there is no other district in which this claim may be brought.

RANDAZZA | LEGAL GROUP

**FACTS COMMON TO ALL CLAIMS**

30. RRT claims ownership of a clip art bird logo (ECF No. 7-1) (the "RRT Logo"), which RRT claims was created as a "mascot" for RRT.




31. The clip art bird here is not even the same logo (although it is similar) that appears in most of the videos that RRT took down.

32. However, assuming arguendo that it was the same logo, or assuming arguendo that its derivatives are covered by the unregistered rights that RRT claims, the use in each and every video is obviously fair use.




33. RRT claims that, on September 9, 2025, it acquired the RRT Logo through an assignment agreement,[23] which included 8 specific alleged works (ECF No. 7-2).

34. On or about October 28, 2025, Counterclaim-Defendant Church sent a DMCA takedown request targeting the GAL video posted on YouTube titled "Lindy expresses her concern regarding the Plymouth Brethren Christian Church's RRT charity" (the "First DMCA Request").[24] This request claims that the GAL video infringed the RRT Logo by displaying the following image (ECF No. 7 at ¶ 20):




[23] Bawtinheimer disputes the chain of title of the alleged works or that RRT actually owns anything allegedly infringed.

RANDAZZA | LEGAL GROUP

35. The fair use here is evident just by looking at the image that RRT put in its own First Amended Complaint, since even the title makes it clear what this is – criticism and commentary.

36. The title of this image is "Lindy expresses her concern regarding the Plymouth Brethren Christian Church's RRT Charity."

37. Obviously, the video at issue in the First DMCA Request criticizes RRT and notes its connection to the Exclusive Brethren/PBCC. The video specifically discusses how people find RRT's "branding and promotional material" to be disturbing.

38. The complained-of image in this video is a display of RRT's website including the text "Compassion in action – supporting communities in need," which appears at 0:52-1:07 of the video. The image appears for 15 seconds out of the five-minute video.

39. This video discusses how this text is ironic coming from RRT, given that RRT and PBCC are in no way compassionate, nor do they support communities in need.

40. Of note is that the video does not feature Bawtinheimer at all; rather, it exclusively features a third party discussing RRT and the Exclusive Brethren/PBCC.




41. On or about October 28, 2025, Counterclaim-Defendant Church sent an equally abusive DMCA takedown request targeting the GAL video posted on YouTube titled "Rapid Relief Team: Hypocrisy &

[24] A true and correct copy of this video in its entirety is attached as **Exhibit 15**. *See* Bawtinheimer Dec. at ¶ 9.

RANDAZZA | LEGAL GROUP

Families Divided at Christmas" (the "Second DMCA Request").[25] This request claims that the GAL video infringed the RRT Logo by displaying the following image (ECF No. 7 at ¶ 22).

42. Again, one needs to go no further than the title to see that this is fair use. The video at issue in the Second DMCA Request criticizes RRT and how the PBCC divides families at Christmas, while their website says that they are bringing members together for the holiday season. The complained-of image in this video displays RRT's promotional message "Bringing families together for the Holiday Season," which appears at 0:18-0:35 of the video. The image appears for 17 seconds out of the three minute and 31 second video.

43. This video discusses how this promotional material is offensive and hypocritical to people familiar with RRT and the Exclusive Brethren/PBCC, as the cult actively works to separate families during the holiday season if any of them dissent from the cult's teachings.

44. Of note is that the video does not feature Bawtinheimer at all; rather, it exclusively features a third party discussing RRT and the Exclusive Brethren/PBCC.

45. Bawtinheimer sent counter-notices under the DMCA to YouTube, which eventually reinstated the videos, finding that they did not infringe on RRT's copyright. YouTube confirmation of receipt of counter-notices, attached as **Exhibit 17**; YouTube notices of reinstatement of videos, attached as **Exhibit 18**.

46. On or about January 10, 2026, Counterclaim-Defendant Church sent another DMCA takedown request once again requesting removal of the same videos at issue in the First and Second DMCA Requests (the "Third DMCA Request").

47. The purpose of this request was to exploit YouTube's policies, which state that YouTube may re-remove a video that is subject to pending litigation. *See* YouTube Counter-

[25] A true and correct copy of this video in its entirety is attached as **Exhibit 16**. *See* Bawtinheimer Dec. at ¶ 10.

RANDAZZA | LEGAL GROUP

notice policies, attached as **Exhibit 19**.[26]

48. On or about January 28, 2026, Counterclaim-Defendant Graif sent a DMCA takedown request targeting the GAL video posted on YouTube titled "Get A Life Ep. 144 Rapid Relief Team's Branded Trauma: Ex-members Speak Out" (the "Fourth DMCA Request").[27] This request claims that the GAL video infringed the RRT Logo by displaying the same image as in the video at issue in the First DMCA Request (ECF No. 7 at ¶¶ 24 & 26).

49. As is evident from its title, the video at issue in the Fourth DMCA Request criticizes RRT and notes its connection to the Exclusive Brethren/PBCC. The complained-of images in this video consist of the images complained of in the First and Second DMCA Requests,[28] as well as: (1) an image incorporating the RRT Logo and the RRT website's "Community, Compassion, Support" language (displayed at 00:03:43-00:04:07, 01:36:56-01:37:13 and 01:37:50-01:37:59); (2) a photo of RRT "relief" tents and trailer with the RRT Logo shown (displayed at 00:04:16-00:05:11); (3) a photo of an RRT van bearing the RRT Logo and the text "Breaking the silence on suicide" and "Construction, Community, Connect" (displayed at 00:19:46-00:21:34 and 01:58:37-01:58:56); and (4) another image from RRT's website that displays a variation of the RRT Logo holding an RRT food box (displayed at 00:33:22-00:35:08). Taken together, the RRT Logo or variations of it are displayed for a total of approximately 621 seconds out of the two-hour video.

50. This video is a lengthy discussion between Bawtinheimer and two other survivors of the Exclusive Brethren/PBCC in which they criticize RRT and the PBCC in various

---

[26] Available at: https://support.google.com/youtube/answer/12497556?hl=en.

[27] A true and correct copy of this video in its entirety is attached as **Exhibit 20**. *See* Bawtinheimer dec. at ¶ 13.

[28] These are displayed at time stamps 00:01:07-00:01:38, 01:19:15-01:22:53, 01:39:47-01:40:02, and 01:53:13-01:53:32 of the video.

RANDAZZA | LEGAL GROUP

ways, including discussing how RRT's promotional material featuring the RRT Logo is extremely hypocritical given how poorly it treats its members and especially its former members once they leave the cult. The gist of this criticism is that RRT makes a performance of helping the needy while, at best, providing crumbs to them, and instead spending most of its resources on self-promotion. The video also incorporates the videos complained of in the First, Second, and Third DMCA Requests in their entirety.

51. On or about January 28, 2026, Counterclaim-Defendant Graif sent a DMCA takedown request targeting the GAL video posted on YouTube titled "Plymouth Brethren Christian Church: Former Member Exposes Rapid Relief Team" (the "Fifth DMCA Request"). While the title was different, this was the same video as complained of in the First DMCA Request; Graif re-issued a takedown request on a video that YouTube had already found was not infringing.

52. On or about January 28, 2026, Counterclaim-Defendant Graif sent a DMCA takedown request targeting the GAL video posted on YouTube titled "Chapter 2 part 1 Rapid Relief Team- Why disaster relief?" (the "Sixth DMCA Request").[29] This request claims that the GAL video infringed the RRT Logo by displaying the following image (ECF No. 7 at ¶ 33):




53. The allegedly infringing image from the video is no more than a screenshot of RRT's own website displaying the RRT Logo with the text "Compassion in action – supporting

[29] A true and correct copy of this video in its entirety is attached as **Exhibit 21**. *See* Bawtinheimer dec. at ¶ 14.

RANDAZZA | LEGAL GROUP

communities in need." It is displayed in the video for approximately 6 seconds (from 05:20-05:26) of the 590-second video.

54. The video at issue in the Sixth DMCA Request discusses how RRT is focused on disaster relief as a method of providing highly visible "charity" work that could be used to rehabilitate the public image of PBCC, similar to charity organizations created by the Church of Scientology when its reputation had been damaged on account of being another cult.

55. On or about January 30, 2026, Counterclaim-Defendant Graif sent a DMCA takedown request targeting the GAL video posted on YouTube titled "Get A Life Ep. 145 Rapid Relief Team: Where's the compassion?- With guest Damian Hastie" (the "Seventh DMCA Request").[30] This request claims that the GAL video infringed the RRT Logo by displaying the following image (ECF No. 7 at ¶¶ 28-29):




56. As is evident from its title, the video at issue in the Seventh DMCA Request criticizes RRT and notes its connection to the PBCC. The complained-of image in this video is a

[30] A true and correct copy of this video in its entirety is attached as **Exhibit 22**. *See* Bawtinheimer dec. at ¶ 15.

RANDAZZA | LEGAL GROUP

mockup of a variation of the RRT Logo as it appears on the RRT website accompanied by the text "Compassion in action – supporting communities in need," next to an image summarizing the speakers' criticisms of RRT. This image is displayed for approximately 12 seconds (from 01:39:12-01:39:24) of the 101-minute video.

57. This video discusses how these slogans of RRT are hypocritical and disingenuous, as RRT largely serves only to enrich itself and the PBCC, that RRT primarily exists to "charity wash" PBCC by making the general public focus on RRT's alleged charitable activities instead of PBCC's misconduct, and that PBCC is operated more like a business than a religious organization.

58. Counterclaim-Defendants continue to send DMCA takedown requests over any video Bawtinheimer posts that even briefly displays the RRT Logo. Bawtinheimer reasonably believes that RRT will continue to do so until a court issues a decision that her use of the RRT Logo is a fair use that does not infringe on RRT's alleged copyright.

59. None of the Counterclaim-Defendants could possibly have believed that the DMCA takedown requests were legitimate, and they had actual knowledge that they were abusing the DMCA process, but they thought they could get away with it.

60. In the alternative, they were so reckless and had so much constructive knowledge of the facts and the law that even if they claim otherwise, they should be held to have knowingly and willfully abused the DMCA takedown process.

61. This was a calculated and premeditated decision to misuse the DMCA process to try and shut down criticism, and everyone involved was aware of that fact, but presumed that they could bully Bawtinheimer into silence.

62. Their presumption was ill conceived.

63. In response to each of the above DMCA requests, YouTube disabled access to the above videos.

64. This is not the first time the Exclusive Brethren/PBCC has resorted to litigation as a tactic of censorship. In 2009, it filed a SLAPP including a claim of copyright infringement against the operator of a website that offered "an online sanctuary" for people to escape the cult. Andy Bromage, "Might v. Site: Will a New Vermont law protect a Williston couple from a powerful religious sect?," SEVEN DAYS (Nov. 4, 2009), attached as **Exhibit 24**.[31]

65. The same publishing arm of the Exclusive Brethren filed suit for defamation and copyright infringement years earlier in Minnesota against the operator of a different criticism website. *Bible & Gospel Trust v. Wyman*, 354 F. Supp. 2d 1025 (D. Minn. 2005). That case eventually resulted in a settlement, which required the operator to transfer his criticism websites to the Exclusive Brethren and agree never again to publish about the cult. Settlement Agreement in *Wyman*, No. 0:04-cv-00700-MJD-JGL (D. Minn.), Dkt. No. 71 at 4, attached as **Exhibit 25**.

66. In 2017, the PBCC sued major Australian media outlets and journalist Michael Bachelard for defamation following investigative articles alleging institutional cover-ups of child sexual abuse within the church. The defendants successfully dismissed the lawsuit, which dismissal was upheld on appeal. *Plymouth Brethren (Exclusive Brethren) Christian Church v. The Age Company Ltd.* [2018] NSWCA 95 (7 May 2018), attached as **Exhibit 26**.[32]

67. Around the same time, the PBCC's publishing arm sued a retired Scottish academic for copyright infringement after he published short extracts and quotes from the cult's internal sermons and teachings as part of criticism about the cult. Billy Kenber, "Exclusive

---

[31] Available at: https://www.sevendaysvt.com/arts-culture/might-v-site-2138732/.
[32] Available at: https://classic.austlii.edu.au/au/cases/nsw/NSWCA/2018/95.html.



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

Brethren 'cult' sues over publication of sermons," THE TIMES (Jan. 23, 2019), attached as **Exhibit 27**.[33]

68. In 2020 in New Zealand, a company closely linked to the PBCC obtained a civil search and seizure order that led to a pre-dawn raid on an ex-PBCC member's home seeking seizure of electronic devices and documents after the ex-member publicly criticized the cult. *See* **Exhibit 6**. This was an obvious intimidation tactic, as the company later dropped its underlying legal claims. *Id*.

69. The PBCC will go to great lengths to shut down and protect its empire, especially when its sexual abuse problem becomes public. *See* **Exhibit 28**.

**CAUSES OF ACTION**

**Count One: Violation of 17 U.S.C. § 512(f)**

**(Against All Counterclaim-Defendants)**

70. Bawtinheimer repeats and re-alleges the allegations in ¶¶ 1-69.

71. Counterclaim-Defendants violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that Bawtinheimer's use of the RRT Logo in a nominative fashion during a video critical of the RRT was copyright infringement.

72. Bawtinheimer's use of the RRT Logo is a self-evidently non-infringing fair use under 17 U.S.C. § 107. The use was non-commercial, intended for criticism and commentary, and that is apparent on the face of the videos, even from the still images in the FAC. *See* ECF No. 7 at ¶¶ 20, 22, 24, 28, 31, & 33.

73. This is an obvious transformative use and the use has no impact on any market or potential market for the original logo.

[33] Available at: https://www.thetimes.com/uk/law/article/cult-sues-over-publication-of-sermons-l9gqfj2hx.

RANDAZZA | LEGAL GROUP

74. On information and belief, Counterclaim-Defendants had actual subjective knowledge that the use of the logo did not infringe on RRT's copyrights and it was fair use.

75. In the alternative, Counterclaim-Defendants were willfully blind to fair use prior to issuing their takedown notices under the DMCA.

76. In the alternative, Counterclaim-Defendants failed to consider fair use prior to issuing their takedown notices under the DMCA.

77. Any reasonable person, and certainly any reasonably competent attorney, would be able to determine upon *any* degree of inspection, that the above videos subjected to Counterclaim-Defendants' DMCA requests consisted exclusively of commentary and criticism about RRT and PBCC, and that the use of the RRT Logo in the videos was a fair use.

78. Counterclaim-Defendant RRT was aware that none of the above videos infringed its alleged copyright in the RRT Logo. It had no good-faith basis for claiming the uses of the RRT Logo were not fair uses. Despite this knowledge, it instructed Counterclaim-Defendants Church and Graif to send the above DMCA requests.

79. On information and belief, Counterclaim-Defendant Church was aware that none of the above videos infringed RRT's alleged copyright in the RRT Logo. She had no good-faith basis for claiming the uses of the RRT Logo were not fair uses. Despite this knowledge, she submitted the First, Second, and Third DMCA Requests.

80. Counterclaim-Defendant Graif was aware that none of the above videos infringed RRT's alleged copyright in the RRT Logo. He had no good-faith basis for claiming the uses of the RRT Logo were not fair uses. Despite this knowledge, he submitted the Third, Fourth, Fifth, Sixth, and Seventh DMCA Requests.

RANDAZZA | LEGAL GROUP

81. Graif, in particular, has no possible excuse for getting things so wrong on fair use. On information and belief, Graif advertises himself as having decades of experience in intellectual property litigation, including extensive experience in copyright law and fair use, he publishes on fair use issues, and he teaches CLEs on fair use. It is impossible for Graif to have formed a good-faith belief that Bawtinheimer's above uses of the RRT Logo were anything other than fair uses. Graif is thus either lying to his clients by claiming he has experience in copyright and fair use law, or he committed perjury when submitting the above DMCA requests, or maybe both.

82. In response to Counterclaim-Defendants' DMCA requests, YouTube disabled access to the above videos.

83. Counterclaim-Defendants violated 17 U.S.C. § 512(f) by misrepresenting that Bawtinheimer's use of the RRT Logo in the above videos was infringing, when in fact they were non-infringing fair uses, and Counterclaim-Defendants knew that.

84. Bawtinheimer has suffered damages as a result of Counterclaim-Defendants' actions and the removal of her videos, and is entitled to an award of damages under 17 U.S.C. § 512(f). While the monetization was minimal, in the tens of dollars, the demonetization is still actual economic damages.

85. Bawtinheimer has been required to retain legal counsel in this matter and is entitled to an award of damages, costs, and attorneys' fees under 17 U.S.C. § 512(f).

86. All Counterclaim-Defendants are jointly and severally liable for the damages, costs, and fees.

RANDAZZA | LEGAL GROUP

**Count Two: Declaratory Relief**

**(Against Counterclaim-Defendant RRT)**

87. Bawtinheimer repeats and re-alleges the allegations in ¶¶ 1-69.

88. There is a real and actual controversy between Bawtinheimer and Counterclaim-Defendant RRT regarding whether the use of a logo of an organization when criticizing that company and its website and statements made accompanied by that logo constitutes copyright infringement. This controversy includes using screen shots from RRT's website and promotional materials to criticize RRT's own statements.

89. Bawtinheimer seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 for the purpose of determining and adjudicating questions of actual controversy between the parties.

90. Bawtinheimer contends as it relates to RRT that, consistent with the Copyright Act of the United States of America, including those laws prohibiting direct, contributory or vicarious infringement, laws protecting fair use and the First Amendment and judicial decisions construing such laws, doctrines, and provisions: a) Use of the RRT Logo in the manner that Bawtinheimer used it was lawful; b) Use of a copyrighted logo to identify the subject of criticism is fair use; and c) Use of a copyrighted logo when it is on a web page or promotional material with other statements by the subject of the criticism is fair use when incorporated into criticism not only of the organization, but of its own statements.

91. Bawtinheimer is informed, believes, and thereon alleges that RRT contends the contrary of each of above-stated propositions (a) through (c).

RANDAZZA | LEGAL GROUP

92. Bawtinheimer requires this relief, independent of prevailing on the case in chief, as RRT might dismiss its claim without prejudice, thus leaving Bawtinheimer uncertain as to her rights.

93. Bawtinheimer requires this relief, independent of prevailing as a defendant in the case in chief, as a declaratory judgment in her favor will permit her to restore her YouTube account to good standing, and to continue to publish criticism of RRT in future videos without needing to edit them.

94. Bawtinheimer requires this relief, independent of prevailing on the case in chief, as RRT is a front for PBCC, which on information and belief, will use the bogus, unsupportable, and dishonest theories promulgated RRT to further seek to censor her.

95. Bawtinheimer requests that the Court determine and adjudge that each and every of the above-stated propositions states the law applicable to the facts involved in this action and that specifically, each of Bawtinheimer's videos attached as **Exhibits 15-16; 20-22**, may be published lawfully without being the subject of a copyright complaint in the future, simply because they display the RRT Logo.

## ANSWER[34]

## PRELIMINARY STATEMENT

1. Admitted that Plaintiff Rapid Relief Team Ltd. ("Plaintiff" or "RRT") has brought this action. With respect to whether the logo is copyrighted or belongs to RRT, Defendant Cheryl Bawtinheimer ("Defendant" or "Bawtinheimer") is without adequate knowledge to admit those facts, and therefore denies them at this time.

[34] This Answer includes the headings contained within the FAC for the sake of accurately representing the sequence and formatting of RRT's allegations. Bawtinheimer does not admit that any of these headings are accurate.

RANDAZZA | LEGAL GROUP

2. The facts alleged in this paragraph are mostly irrelevant to Plaintiff's claim, and are facts that Defendant cannot easily verify. However, RRT's characterization of itself is contrary to Defendant's opinions of RRT and the opinions of many others. RRT is merely a front for Plymouth Brethren Christian Church. Therefore, Denied.

3. This paragraph makes allegations that Defendant cannot confirm independently, and makes allegations that are legal conclusions, therefore, Defendant denies the allegations. Additionally, to the extent that this paragraph alleges that the Copyrighted Work is the same as the stylized bird logo in Paragraph 1, denied.

4. This paragraph makes allegations that Defendant cannot confirm independently, and makes allegations that are legal conclusions, therefore, Defendant denies all of the allegations except that RRT has displayed the alleged "work" on its website.

5. This paragraph is misleading. The claims asserted arise out of and are based on Defendant's criticism of RRT and Plymouth Brethren Christian Church. Admitted that Plaintiff sues for alleged copyright infringement.

6. Admitted that Plaintiff is seeking remedies under the Copyright Act. Denied that there is any infringing conduct, much less willfully infringing conduct.

**JURISDICTION AND VENUE**

7. Admitted that this Court has jurisdiction.

8. Admitted that Defendant consented to jurisdiction here.

9. Admitted that venue is proper here.

**PARTIES**

10. Defendant has no actual knowledge of the facts alleged in this paragraph, to the extent that Defendant can admit them, therefore denied.

11. Admitted.

## FACTS

A. Plaintiff and its Copyrighted Works

12. The facts in this allegation are beyond Defendant's knowledge before discovery, and are therefore denied.

13. The facts in this allegation are beyond Defendant's knowledge before discovery, and are therefore denied.

14. The facts in this allegation are beyond Defendant's knowledge before discovery, and the validity and the authenticity of the exhibits is not yet confirmed, therefore all allegations in this paragraph are denied. As further grounds for denial, the image in Paragraph 1 of the FAC does not appear in Exhibit 1 to the FAC.

15. The copyrighted work does not appear to be original. On information and belief it is a derivative work made from a stock image gallery. While Plaintiff claims that the image is "wholly original," the fundamental design elements such as the exaggerated beak, the specific posture, and the "staring" eyes are standard tropes used in generic Australian animal clip art. An analysis of the image suggests that it was created with clip art as its basis. Further, the vector path of the drawing suggests non-originality. On information and belief it was created using "Auto-Trace" software or basic vector shape-stacking used by high-volume stock artists. Given that all outward indications are that this is not an original work at all, but rather a mashup of clip art created from a standard stock image, the claims of originality are denied. Under *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991), paying a designer to click "group" on stock icons is insufficient for copyrightability. Therefore, denied.



RANDAZZA | LEGAL GROUP

16. The Copyrighted Work does not appear to be the same as the Stylized Bird in Paragraph 1 of the FAC, therefore denied.

B. Defendant's Infringing Conduct

17. Admitted.

18. Admitted.

19. The structure and content of this allegation is misleading, therefore the allegations are denied. To the extent that it could be recharacterized as alleging that Defendant did, indeed, make the videos, and publish them, and that the RRT kookaburra logo is displayed, that is admitted.

20. Admitted, with the exception of any admission that the work is copyrighted. However, admitted that the image in Paragraph 1 of the FAC is shown in the video, as evidenced by the still image from the video.

21. Admitted.

22. Admitted, with the exception of any admission that the work is copyrighted. However, admitted that the image in Paragraph 1 of the FAC is shown in the video, as evidenced by the still image from the video.

23. Admitted.

24. Admitted, with the exception of any admission that the work is copyrighted. However, admitted that the image in Paragraph 1 of the FAC is shown in the video, as evidenced by the still image from the video.

25. Admitted.

26. Admitted, with the exception of any admission that the work is copyrighted. However, admitted that the image in Paragraph 1 of the FAC is in the video.



RANDAZZA | LEGAL GROUP

27. Admitted.

28. Admitted, with the exception of any admission that the work is copyrighted. However, admitted that the image in Paragraph 1 of the FAC is shown in the video, as evidenced by the still image from the video.

29. Admitted.

30. Admitted.

31. Admitted, with the exception of any admission that the work is copyrighted. However, admitted that the image in Paragraph 1 of the FAC is shown in the video, as evidenced by the still image from the video.

32. Admitted.

33. Admitted, with the exception of any admission that the work is copyrighted. However, admitted that the image in Paragraph 1 of the FAC is shown in the video, as evidenced by the still image from the video.

34. Admitted.

35. The entire paragraph is a willful misrepresentation of the facts and of basic principles of copyright law, and could not have been drafted in compliance with Fed. R. Civ. P. 11. Denied.

36. Denied. The paragraph is a willful misrepresentation of the facts, of copyright law, and could not have been drafted in compliance with Fed. R. Civ. P. 11, with the exception of the fact that Defendant has never accounted to or otherwise paid Plaintiff for her use of the Copyrighted Work. That portion is admitted.

37. Denied.



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

**COUNT ONE**

**Federal Copyright Infringement**

**(17 U.S.C. § 501)**

38. Does not call for an admission nor a denial.

39. Denied for the same reasons stated in the answer to paragraph 15.

40. Denied. Even if the Stylized Bird logo is copyrightable, fair use is not infringement.

41. Defendant admits reproducing the logo in her videos reporting on other videos, but that such reproduction was incidental to her reporting. All other elements of this allegation are denied.

42. Denied. The lawsuit is not due to loss of any kind in an intellectual property sense. Rather, this entire suit is a misuse of copyright law, filed specifically to censor speech critical of Plaintiff, the Defendant's or otherwise.

43. Denied for the same reasons stated in the answer to paragraph 42.

**<u>AFFIRMATIVE AND OTHER DEFENSES</u>**

Defendant's affirmative and other defenses, as set forth herein, are based solely upon Plaintiff's allegations in its FAC, which do not describe events with sufficient particularity to enable Defendant to determine each and every defense which might exist to Plaintiff's claim. Defendant reserves the right to assert and rely upon additional defenses that become available or apparent during the pendency of this action and to modify the affirmative defenses asserted herein as additional information is obtained by Defendant.

Defendant asserts the affirmative and other defenses set forth below, each as separate and distinct affirmative defenses to Plaintiff's cause of action. Insofar as any of the following

RANDAZZA | LEGAL GROUP

expresses denial of an element of any claim alleged against Defendant, that denial does not indicate that Plaintiff is relieved of its burden to prove each and every element of such claims, or that Defendant has assumed any burden of proof. Defendant hereby gives notice that she intends to rely upon such other and further defenses as may become available or apparent during, for example, pre-trial proceedings in this case and hereby reserves the right to amend this Answer and offer or assert additional defenses that cannot now be articulated because, among other reasons, the parties have not conducted discovery.

**FIRST AFFIRMATIVE DEFENSE**

**Non-Copyrightability**

1. The Copyrighted Work does not appear to be original. It is a derivative work made from a stock image gallery. While Plaintiff claims that the image is "wholly original," the fundamental design elements such as the exaggerated beak, the specific posture, and the "staring" eyes are standard tropes used in generic Australian animal clip art. The image appears to have been created with clip art as its basis. Further, the vector path of the drawing suggests non-originality. It appears to have been created by auto trace software or basic vector shape-stacking used by high-volume stock artists.

2. Given that all outward indications are that this is not an original work at all, but rather a mashup of clip art, created from a standards stock image, the Copyrighted Work is not original under *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991), and thus not eligible for copyright protection.

3. Furthermore, the RRT Logo is obviously being used solely as a trademark, rather than as a work of creative expression, and is thus not entitled to copyright protection.

RANDAZZA | LEGAL GROUP

## SECOND AFFIRMATIVE DEFENSE

### Lack of Ownership

1. The assignments of copyrights in Exhibit B to the FAC are either incomplete, invalid, or otherwise do not confer sufficient title to the logo to permit a valid suit for copyright infringement.

2. Accordingly, Plaintiff does not own copyright in the allegedly infringed work and lacks standing to bring its claim for copyright infringement.

## THIRD DEFENSE

### Fair Use[35]

1. Even if Plaintiff's logo is original and has sufficient creative elements within it to sustain a copyright infringement claim, and assuming further that Plaintiff is truly the proper owner of sufficient elements in the logo to bring a copyright infringement claim, Defendant's use of the logo is not infringement because it is fair use.

2. The logo in each video is displayed in the context of a longer video in which the speaker in the video is criticizing RRT and Plymouth Brethren Christian Church.

3. As shown in **Exhibits 15-16; 20-22**, Bawtinheimer's videos consist of commentary and criticism of RRT and PBCC, the religious cult for which RRT serves as cover. These videos consist of statements from Bawtinheimer herself and other survivors of PBCC who explain how RRT's messaging, slogans, and alleged charity work are little more than

[35] Fair Use is not properly characterized as an "affirmative defense" as fair use is simply "not infringement." However, some courts erroneously characterize it as an affirmative defense. Thus, in the alternative to simply being the "third defense" it is the "third affirmative defense." *See Lenz v. Universal Music Corp*, 815 F.3d 1145, 1153 (9th Cir. 2016) (finding that "fair use is . . . distinct from affirmative defenses where a use infringes a copyright, but there is no liability due to a valid excuse" and "fair use is a unique situation in Copyright law, and it is thus treated differently from traditional affirmative defenses").

RANDAZZA | LEGAL GROUP

attempts to "charity wash" PBCC's systemic abuse of its current and former members. The RRT Logo is plastered all over these slogans and propaganda, and it is thus necessary to occasionally include images of the RRT Logo when criticizing RRT.

4. This is not infringement, as the public has a right to use a logo of a company to criticize that company, especially when that logo appears on a website, next to statements that are the subject of criticism.

5. [T]he fair use of a copyrighted work, including such use by reproduction … for purposes such as criticism, comment, [or] news reporting… is not an infringement of copyright." 17 U.S.C. § 107. "The fair use doctrine thus 'permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (alteration in original) (quoting *Stewart v. Abend*, 495 U.S. 207, 236 (1990)).

6. There are four factors a court should consider in determining whether the use of a work is fair: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

7. In this case, the purpose and character are transformative. The logo is juxtaposed on a video in which the video's author is discussing and criticizing RRT. "[C]ourts have found a secondary use to be transformative when it is 'plainly different from the original purpose for which [the copyrighted work was] created' — even where a secondary user has made an exact replication of a copyrighted image." *Sarl Louis Feraud Int'l v. Viewfinder Inc.*, 627 F. Supp. 2d

123, 128-29 (S.D.N.Y. 2008) (citations omitted). "[A]n allegedly infringing work is typically viewed as transformative as long as new expressive content or message is apparent." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013). While Defendant's use was not commercial, "[e]ven assuming that the use had a purely commercial purpose, the presumption of unfairness can be rebutted by the characteristics of the use." *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1152-53 (9th Cir. 1986).

8. In an analogous case, the Fourth Circuit found that use of the Baltimore Ravens logo to identify the team while discussing the team was transformative. *Bouchat v. Baltimore Ravens Ltd. P'ship*, 737 F.3d 932, 941 (4th Cir. 2013).

9. The nature of the work favors fair use as well. The logo is an image that Plaintiff admits was created to identify the organization. (ECF No. 7 at ¶ 12). This makes it more of a "functional work" than a creative work. *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 (9th Cir. 2003) (noting that "creative works are 'closer to the core of intended copyright protection' than informational and functional works").

10. When a company has a logo identifying itself, it is fair use to use that logo nominatively to identify the company when criticizing it. The uses were not even of just the logo, but specifically the logo as it appeared on RRT's website containing promotional material published by RRT, where the commenters were criticizing the organization based at least in part on such promotional material. The Court should review the videos in their entirety, but even the screen captures that the plaintiff itself selected show that this is criticism and commentary, and thus a transformative use. *See* ECF No. 7 at ¶¶ 20, 22, 24, 28, 31, & 33.

11. Under the third fair use factor, while Defendant used the entirety of the Copyrighted Work, or a derivative of it, this is not dispositive. Use of an entire work can still



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

be fair. *See Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000). It is also important to look at only the protectible elements of the original work, rather than the entire work itself, in this analysis. *See Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 115-16 (2d Cir. 1998). Elements of a work "that are standard, stock, or common to a particular subject matter or medium are not protectable . . . ." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). Again, *Bouchat* is instructive. *Bouchat*, 737 F.3d at 943 ("Though the NFL has used Bouchat's work in its entirety, the transformativeness of the use and the character of Bouchat's work led us to give very little weight to this factor. It would be senseless to permit the NFL to use the Flying B logo for factual, historical purposes, but permit it to show only a half, or two-thirds of it").

12. The effect on the market for the original is nothing. Critique or commentary that might harm the plaintiff "by force of its criticism, rather than by supplying the demands of the market, does not create a cognizable harm under the Copyright Act." *Savage v. Council on Am.-Islamic Rels., Inc.*, No. C 07-6076 SI, 2008 U.S. Dist. LEXIS 60545, at *22 (N.D. Cal. July 25, 2008). Any potential claims on the market impact of derivative works are barred as a matter of law because "there is no protectible derivative market for criticism" and impairing such a market by the effectiveness of critical commentary is not relevant under copyright law. *Id.* at *23 n.2 (quoting *Campbell*, 510 U.S. at 592-93).

13. Plaintiff admits that the logo has but one purpose - as a source identifier for Plaintiff's organization. This is more akin to a trademark issue than a copyright one, but again this would be subject to the doctrine of nominative fair use, even if recharacterized as a trademark infringement claim. In *Campbell*, the Court clarified that even if Defendant's use was commercial, any presumption of market harm for commercial uses only applies where the

use of the work is not transformative. *Campbell*, 510 U.S. at 591. The "market harm" that Plaintiff is actually another way of alleging reputational harm caused through criticism, a harm that the Copyright Act cannot, and was never intended to, remedy. "[T]he protection of privacy is not a function of the copyright law. . . . To the contrary, the copyright law offers a limited monopoly to encourage ultimate public access to the creative work of the author." *Bond v. Blum*, 317 F.3d 385, 395 (4th Cir. 2003). To criticize a party without showing their statements and provenance of their statements would not only make the criticism less reliable, but would be unfair to a plaintiff. *See, e.g., Savage v. Council on Am.-Islamic Rels., Inc.*, No. C 07-6076 SI, 2008 U.S. Dist. LEXIS 60545, at *15 (N.D. Cal. July 25, 2008).

**PRAYER FOR RELIEF**

WHEREFORE, Bawtinheimer prays for relief as follows:

A. That Plaintiff takes nothing by way of its First Amended Complaint;

B. That the First Amended Complaint be dismissed with prejudice;

C. That the Court enter a preliminary and permanent injunction restraining RRT, its agents, servants, employees, attorneys, successors, and assigns, and all others acting in concert with RRT, from bringing any lawsuit or threat against Bawtinheimer or any other critic for copyright infringement in connection with the use of the RRT Logo, or variants thereof, to comment on or criticize RRT;

D. That the Court enter a preliminary and permanent injunction restraining RRT, its agents, servants, employees, attorneys, successors, and assigns, and all others acting in concert with RRT, from sending any removal or takedown requests under the DMCA in connection with the use of the RRT Logo, or variants thereof, to comment on or criticize RRT;



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

E. That the Court award Bawtinheimer damages under 17 U.S.C. § 512(f) in an amount to be proven at trial;

F. That the Court award Bawtinheimer costs and attorneys' fees as required under 17 U.S.C. § 512(f) and under 17 U.S.C. § 505;

G. That the Court enter a declaratory judgment that Bawtinheimer's alleged use of the Copyrighted Work is a fair use;

H. That the Court enter a declaratory judgment that Bawtinheimer has not infringed any copyright of RRT; and

I. Such other and further relief as the Court deems proper.

**DEMAND FOR JURY TRIAL**

Bawtinheimer Demands a trial by jury on all issues so triable.

Dated: April 3, 2026.

Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza

Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
8991 W. Flamingo Rd., Ste. B
Las Vegas, NV 89147

C.A. GOLDBERG, PLLC
Carrie Goldberg (*pro hac vice* forthcoming)
16 Court St, 33rd Floor
Brooklyn, NY 11241

*Attorneys for Defendant and Counterclaim-Plaintiff, Cheryl Bawtinheimer*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 3, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza

RANDAZZA | LEGAL GROUP